FILED ORIGINAL
IN CLERK'S OFFICE
U~ ~.Y: D&F
* OCT ~ 5 2005 *C/M
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
LOUIS TATTA,

            Petitioner,

-against-

DAVID L. MILLER, Superintendent, Eastern
New York Correction Facility,

            Respondent.
----------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 05-CV-1205 (FB)(MG)

*Appearances:*
*For the Petitioner:*
LOUIS TATTA, *pro se*
89A0004
Eastern New York Correctional Facility
Post Office Box 338
Napanoch, New York 12458

*For the Respondent:*
MICHELLE MAEROV, ESQ.
Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, New York 10271

**BLOCK, District Judge:**

    *Pro se* petitioner, Louis Tatta ("Tatta"), seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, claiming that the New York State Parole Board ("Parole Board") denied his application for parole in violation of his federal constitutional rights. Respondent, David L. Miller ("Miller"), moves to dismiss the petition as unexhausted under 28 U.S.C. § 2254(b)(1) or, in the alternative, to deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2). For the following reasons, the Court denies the petition on the merits.

I.

**A. Background**

    In 1988, Tatta was convicted in state court of six counts of first-degree assault,

one count of first-degree burglary and one count of first-degree unlawful imprisonment, all in connection with an incident in which he held his ex-girlfriend hostage and stabbed her and her sister. Based on those convictions, Tatta is currently serving a indeterminate sentence of thirteen and one-third to forty years.[1]

In August 2000, Tatta applied for parole. The Parole Board denied his application based, in part, on the serious nature of his offenses and his criminal history. After exhausting his state-court remedies, Tatta sought permission to file a *habeas* petition challenging the denial. The Second Circuit granted that permission and transferred the case to this Court, which denied the petition on Mar. 25, 2003. *See Tatta v. Miller*, Case No. 02-CV-4300 (FB) (E.D.N.Y.) (Judgment of Mar. 25, 2003), *appeal dismissed*, Case No. 03-2224 (2d Cir.) (Mandate of Nov. 21, 2003).

On September 4, 2002, Tatta appeared before the Parole Board for the second time. His parole application was again denied based, in part, on the nature of his offenses and his criminal history. Tatta exhausted his state-court remedies for this denial by seeking a writ of mandamus pursuant to Article 78 of the New York Civil Procedure Law and Rules, appealing to the Appellate Division and seeking leave to appeal to the New York Court of Appeals. *See Tatta v. Travis*, 780 N.Y.S.2d 238, 239 (3d Dep't 2004) (affirming dismissal of Article 78 proceeding), *lv. denied*, 3 N.Y.3d 610 (2004) (table).

On September 8, 2004, Tatta appeared before the Parole Board for the third

---

[1] Tatta previously filed a *habeas* petition challenging the convictions and sentence, which this Court denied. *See Tatta v. Mitchell*, Case No. 94-CV-3222 (FB) (E.D.N.Y.) (Judgment of May 7, 1997), *appeal dismissed*, Case No. 98-2532 (2d Cir.) (Mandate of Dec. 9, 1999). The convictions and sentence are not at issue in the present *habeas* proceeding.

2

time. At the hearing, the board considered his good record while incarcerated and his employment and other plans if released; however, the board denied the application, once again relying on "the serious nature and violent circumstances of the instant offense" and Tatta's "established history of violence." Maerov Decl., Ex. A. Tatta exhausted his administrative appeals for this third denial and filed an Article 78 proceeding in the Supreme Court, Albany County; that proceeding remains pending.

On November 5, 2004, Tatta sought permission to file a successive *habeas* petition; it is not clear whether the petition sought to challenge the second or third denial of parole. On December 1, 2004, the Second Circuit ruled that the proposed petition would not be "successive" within the meaning of 28 U.S.C. § 2254 and transferred the case to this Court. *See Tatta v. Miller*, Case No. 04-5811 (2d Cir.) (Order of Dec. 1, 2004).

### B. Tatta's Claims

In the *habeas* petition currently before the Court, Tatta claims that the denial of his parole application violated the Due Process Clause in two ways: First, that the Parole Board considered the nature of his offense and his criminal history; second, that the Parole Board improperly considered those factors "in retaliation for [his] appealing a prior parole denial . . . and his filing of two civil law suits against the State Department of Corrections." Pet. at 5F.

### II.

### A. Exhaustion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a *habeas* petitioner must, with certain exceptions not implicated here, "exhaust the remedies

3

available in the courts of the State." 28 U.S.C. § 2254(b)(1). "To exhaust a denial of parole under New York law, an inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78 of the Civil Practice Law and Rules." *Morel v. Thomas*, 2003 WL 21488017, *2 n.3 (S.D.N.Y. Jun. 26, 2003). "If the Article 78 petition is denied, the [inmate] must appeal that denial to the 'highest state court capable of reviewing it.'" *Scales v. New York State Div. of Parole*, 2005 WL 2676861, *3 (S.D.N.Y. Oct. 18, 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir.2003)).

Tatta has exhausted his state-court remedies regarding the denial of his second parole application in 2002. With regard to the denial of his third application in 2004, however, his Article 78 petition remains pending; until that petition is ruled on and, if denied, appealed, a claim regarding the third denial is unexhausted.

It is not clear which denial Tatta is challenging in the present *habeas* proceeding. Although he claims he is challenging only the second denial, the petition itself is not so limited; moreover, a challenge to the second denial has arguably become moot in light of his third application. *See Rodriguez v. Greenfield*, 2002 WL 48440, *4 (S.D.N.Y. Jan. 10, 2002) (noting that 1998 parole denial was "academic" in light of denials in 1999 and 2000); *Romer v. Travis*, 2003 WL 21744079, *4 (S.D.N.Y. Jul. 29, 2003) (concluding that challenge to previous parole denial was moot, but within "capable of repetition, yet evading review" exception to mootness doctrine).

It is unnecessary to decide the exhaustion issue if Tatta's petition can be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of *habeas*

4

*corpus* may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Court therefore turns to the merits of the petition.

**B. Merits**

The Second Circuit has not defined a specific standard for dismissing a *habeas* petition pursuant to § 2254(b)(2); a number of district courts in the circuit have held that an unexhausted claim must be "patently frivolous" to warrant such a dismissal. *See Naranjo v. Filion*, 2003 WL 1900867, *8 (S.D.N.Y. 2003) (collecting cases). This Court has previously expressed its reservations about the "patently frivolous" standard, opining that the claim need only be "nonmeritorious." *Basnight v. Keane*, 2001 WL 901139, *5 n.1 (E.D.N.Y. Jul. 31, 2001) (Block, J.) (quoting *Duncan v. Walker*, 533 U.S. 167, 183 (2001) (Stevens, J., concurring in part and concurring in the judgment)). The distinction is not material here; Tatta's petition must be dismissed under either standard.

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As noted above, Tatta argues that the denial of his parole application violated the Due Process Clause. "The Due Process Clause has both procedural and substantive components," *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005); Tatta does not specify whether he is claiming a procedural due-process violation, a substantive due-process violation, or both. In an abundance of caution, the Court will address both.

*1. Procedural Due Process*

"In its procedural aspect, due process ensures that government, when dealing

5

with private persons, will use fair procedures." *Id.* (citing *Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972)). Procedural due process is only implicated, however, when a legally recognized interest – life, liberty or property – is at stake. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("[W]hen there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest.").

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id.* Notwithstanding the lack of a constitutional right to parole, state law may create a "legitimate expectation of release" that is "entitled to some measure of constitutional protection" under the procedural component of the Due Process Clause. *Id.* at 12 (holding that Nebraska's parole statute created such an expectation); *see also Board of Prisons v. Allens*, 482 U.S. 369, 381 (1987) (holding that Montana's parole statute creates "a liberty interest protected by the Due Process Clause."). The Second Circuit has squarely held, however, that "the New York State parole scheme does not create a protectable liberty interest." *Marvin v. Goord*, 255 F.3d 40, 44 (2d Cir. 2001); *see also Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) ("The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release.") (both citing *Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979)). Lacking any protectable liberty interest in parole, Tatta cannot argue that the denial of parole violated his procedural due-process rights.

Moreover, regardless of whether New York's parole scheme gives rise to a legitimate expectation of release, the denial of Tatta's application for parole comported with procedural due process, which, in this context, requires only that the inmate be given

an opportunity to be heard and informed of the reasons for the denial of parole. *See Greenholtz*, 442 U.S. at 16 ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."). Tatta received both a hearing and the reasons for the denial of parole.

2. *Substantive Due Process*

"In its substantive aspect, due process safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." *DePoutot*, 424 F.3d at 118. The Third Circuit has held that "the denial of parole may give rise to a substantive due process violation even though there is not liberty interest in parole," *Rauso v. Vaughn*, 1999 WL 111474, *1 (E.D. Pa. Mar. 2, 1999) (citing *Block v. Potter*, 631 F.2d 233 (3d Cir. 1980)); *Block* describes that substantive due-process right as follows: "Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." 631 F.2d at 235. The Court need not opine on whether the substantive due-process right described in *Block* exists because, even if it does, it was not violated in this case.[2]

---

[2]The Court notes, however, that the Second Circuit has never adopted *Block*'s holding, and that several circuits have rejected it. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("[B]ecause Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."); *Jones v. Georgia State Bd. of Pardons*

7

"Denial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." *Romer*, 2003 WL 21744079, at *6. The relevant statute

> requires that the Parole Board consider certain guidelines, including the inmate's institutional record, participation in a temporary release program, and release plans. **In addition, where, as here, a court and not the Board of Parole has set the minimum period of imprisonment, the Parole Board must also consider the seriousness of the offense and the inmate's prior criminal record.**

*King v. New York State Div. of Parole*, 83 N.Y.2d 788, 790 (1994) (citing N.Y. Exec. Law § 259-i[1][a], [2][c]) (emphasis added). Contrary to Tatta's contention, that an inmate has previously applied for parole does not preclude the board from considering the nature of the offense and criminal history when the inmate's minimum term of imprisonment was set by a court. *See id.* at 790 (noting that inmate had "thrice sought release to parole supervision"); *Flecha v. Travis*, 667 N.Y.S.2d 519, 520 (3d Dep't 1998) ("Because the trial court set petitioner's minimum period of imprisonment, the Board was required to take into account, among other statutory factors, the seriousness of petitioner's crimes and his prior criminal record" in subsequent parole application.); *see also Guerin v. New York State*

---

*& Paroles*, 59 F.3d 1145, 1150 (11th Cir. 1995) (rejecting substantive due-process challenge because "Georgia prisoners do not have a due-process protected liberty interest in parole."); *Bailey v. Gardebring*, 940 F.2d 1150, 1157 (8th Cir. 1991) ("It is plain that a convicted criminal has no fundamental right to consideration for early release; the doctrine of substantive due process therefore affords [the prisoner] no basis for relief."). Even the Third Circuit has questioned the continued viability of *Block*: "[N]ot only do courts of appeals in other circuits disagree with *Block*, but more recent decisions in this Court suggest that *Block* may be obsolete." *Jubilee v. Horn*, No. 97-1755, slip. op. at 1 (3d Cir. Mar. 26, 1998) (unpublished), *quoted in Rauso*, 1999 WL 111474, at *1.

Div. of Parole, 714 N.Y.S.2d 770, 772 (3d Dep't 2000); *Hawkins v. Travis*, 686 N.Y.S.2d 198, 198-99 (3d Dep't 1999) (both rejecting Tatta's contention).

Tatta's minimum term of imprisonment was set by a court; therefore, the Parole Board followed its statutory obligations by considering the nature of his offense and his criminal history. As a result, the board's decision cannot be termed arbitrary or capricious.

Tatta's retaliation argument is similarly defective. The Court recognizes that government actions may violate the Constitution "if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right," *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999), and that Tatta's right to appeal the denial of his parole application and to sue the New York Department of Corrections has a constitutional dimension. *See Bounds v. Smith*, 430 U.S. 817 (1977) (recognizing federal constitutional right of access to courts). There is, however, no evidence that the Parole Board's decision was made in retaliation for those actions. Tatta's sole support for his retaliation claim is his contention that the board improperly considered the nature of his offense and his criminal history; as explained above, that contention is incorrect. Thus, there is no indication that the board considered any constitutionally impermissible factors in making its decision.

### III.

In sum, Tatta's claim that the denial of his parole application violated either his procedural or his substantive due-process rights is "nonmeritorious" (or alternatively, "patently frivolous"); his *habeas* petition is therefore denied pursuant to 28 U.S.C. § 2254(b)(2). Because he has failed to make a substantial showing of the denial of a federal

right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
October 27, 2005